IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2021

## BOBBY RAY GRAVES, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Warren County**
**No. 14-CR-372     Larry B. Stanley, Jr., Judge**

_____

### No. M2020-01707-CCA-R3-PC

_____

The Petitioner, Bobby Ray Graves, Jr., appeals from the Warren County Circuit Court's denial of his petition for post-conviction relief, wherein he challenged his conviction for failure to appear. See Tenn. Code Ann. § 39-16-609. On appeal, the Petitioner submits that he received the ineffective assistance of counsel due to trial counsel's failure to call the Petitioner's brother to testify in his defense at trial. Then, requesting this court to apply the cumulative error doctrine, the Petitioner contends that he was prejudiced by trial counsel's "failures to properly object to the State's impermissible statements during cross-examination and closing arguments," trial counsel's failure to present the Petitioner's brother to testify, and trial counsel's "fail[ure] to argue the missing witness rule." As a final issue, he submits that appellate counsel was ineffective by failing to address the missing witness rule on appeal. Following our review of the record, we affirm the post-conviction court's judgment denying relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Christina S. Stanford, McMinnville, Tennessee, for the appellant, Bobby Ray Graves, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Lisa S. Zavogiannis, District Attorney General; and Marla R. Holloway, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
FACTUAL BACKGROUND

The Petitioner was originally charged with introduction of contraband into a penal institution, to wit: a cellphone, and his trial was set for October 7, 2014. See State v. Bobby

Ray Graves, Jr., No. M2017-00088-CCA-R3-CD, 2018 WL 2331869, at *1 (Tenn. Crim. App. May 23, 2018), perm. app. denied (Tenn. Sept. 14, 2018). The Petitioner was out on bond while awaiting trial. Jonathan Crouch, a correction officer with the Warren County Sheriff's Department ("WCSD"); Ryan Julian Moore, the Petitioner's attorney; and other witnesses were present in court on October 7. When the Petitioner did not show, the trial did not go forward, and he was subsequently charged with failure to appear, a Class E felony. See Tenn. Code Ann. § 39-16-609(e) (2014).

The State presented the following proof at the Petitioner's trial. Based upon multiple conversations with Mr. Moore, the Petitioner was aware that he was to appear for trial on October 7, 2014. Graves, 2018 WL 2331869, at *4. Moreover, the Petitioner provided Mr. Moore and Len Murray, the Petitioner's bondsman, with addresses and telephone numbers so that they could maintain contact with him while he was awaiting trial. In the months leading up to the trial date, the Petitioner kept in contact with Mr. Moore and made required weekly telephone calls to Mr. Murray. Two or three weeks before trial, though, he suddenly and inexplicably stopped contacting Mr. Murray. Mr. Murray, who knew the Petitioner was no longer living with his wife, tried diligently to find the Petitioner by using the telephone numbers, addresses, and references the Petitioner had given for the express purpose of Mr. Murray's being able to locate the Petitioner; however, Mr. Murray was unsuccessful. Mr. Murray's boss also contacted the Petitioner's brother, Brandon Graves, trying to find the Petitioner. Id. at *2.

In addition, Mr. Moore, who was aware that Mr. Murray could not find the Petitioner, also used numerous telephone numbers the Petitioner had provided but was unable to get in touch with him. Graves, 2018 WL 2331869, at *4. The day before trial, Mr. Moore received a telephone call from the Petitioner's brother, who lived in Knoxville. Id. at *1. The Petitioner never notified either Mr. Moore or Mr. Murray about the reason for his absence at trial or his location. Id. at *4. Mr. Murray used various resources to try to track down the Petitioner after he did not appear for trial but still was unable to find him. Mr. Murray did not learn the Petitioner's whereabouts until the police arrested the Petitioner in Knoxville.

The Petitioner testified in his own defense, indicating that his wife had "put [him] out," that he was living "[o]n the streets here and there," and that he did not own a car. Graves, 2018 WL 2331869, at *3. The Petitioner testified that on October 7, his brother was driving him from Knoxville to Warren County for trial and that they left Knoxville at 7:00 or 7:30 a.m. in plenty of time for court. However, about an hour into the trip, according to the Petitioner, his brother's car "started messing up" on Interstate 40, so they pulled over. The car was "smoking," and they could not drive it. The Petitioner testified that his brother telephoned the Warren County Courthouse to let "them" know the Petitioner would be "a little late." During the call, the Petitioner's brother learned that an

"FTA," or failure to appear, had been issued for the Petitioner. The Petitioner's brother telephoned a friend, and the Petitioner and his brother waited about forty-five minutes for the friend to come get them. While they were waiting, they got the car "up and running," and the friend followed them back to Knoxville. The Petitioner did not go to Warren County and did not contact his attorney or his bondsman.

On cross-examination, the Petitioner testified that he spoke with Mr. Moore within a week before the scheduled trial, though he did not recall a specific date. Graves, 2018 WL 2331869, at *3. The Petitioner acknowledged that his brother and his brother's friend were not present to testify for him about why he was unable to appear for trial on October 7. He said that he was no longer on speaking terms with his brother and that he did not know his brother's friend. According to the Petitioner, Mr. Moore had tried to contact the Petitioner's brother in "the past couple of days," but was unsuccessful. The Petitioner acknowledged that he was on probation when he went to Knoxville, that he violated his probation by going there, and that he knew he would be arrested for the probation violation if he returned to Warren County on October 7.

At the conclusion of the proof, the jury convicted the Petitioner as charged of failure to appear. Subsequently, the trial court found the Petitioner to be a career offender and sentenced him to the statutorily-required punishment of six years to be served at sixty percent release eligibility.

The Petitioner appealed. On appeal, the Petitioner first argued that the evidence was insufficient to support the conviction because the State had failed to prove that he "went into hiding to avoid prosecution"; however, this court found no merit to his claim and affirmed the sufficiency of the evidence. Graves, 2018 WL 2331869, at *3-4. Next, the Petitioner argued that the State committed prosecutorial misconduct during closing arguments. Id. at *4. This court explained that although the Petitioner took issue with five statements made by the prosecutor during closing arguments, he did not make any contemporaneous objection to four of those statements, thus, waiving review of those four. Id. at *5. It was noted that during oral arguments, appellate counsel made a cursory request that we review the four statements for plain error. Id. However, because the Petitioner made no legal argument in his brief or at oral arguments as to why the prosecutor's statements rose to the level of the heightened plain error standard, this court declined appellate counsel's request, and only addressed the one statement to which trial counsel had lodged a contemporaneous objection. Id.

On appeal, the Petitioner contended that the prosecutor's argument about his failure to have his brother or his brother's friend testify at trial "injected a broader issue than that of the defendant's guilt or innocence." Id. This court concluded that the State did not commit prosecutorial misconduct, reasoning as follows:

- 3 -

During cross-examination of the [Petitioner], the State asked if his brother, his brother's friend, or anyone from the courthouse who took his brother's telephone call was present to testify for him. The [Petitioner] did not object to the State's questions and answered each question in the negative. Therefore, the prosecutor's argument was based on the evidence at trial. Moreover, during the State's initial closing argument, the prosecutor argued that if the [the Petitioner's] story about having car trouble on the highway were true, then the [Petitioner's] brother and brother's friend would have testified for him. The prosecutor further argued that because the [Petitioner] did not call his brother or his brother's friend to testify, the jury could conclude that their testimony would not have been favorable to the [Petitioner]. Again, the [Petitioner] never objected to the prosecutor's statements.

Graves, 2018 WL 2331869, at *6. This court further observed that the Petitioner did not make any argument at trial that the prosecutor's cross-examination questions or closing arguments violated the missing witness rule and that the issue was not raised on appeal. Id. For all these reasons, the court determined that the Petitioner was not entitled to relief. Id. (citing Tenn. R. Evid. 36(a)).

The Petitioner filed a pro se petition for post-conviction relief on May 14, 2019. After appointment of counsel, the Petitioner filed an amended petition. In the amended petition, the Petitioner raised the following issues: (1) trial counsel was ineffective in that he failed to present the Petitioner's brother and his brother's friend to testify at trial because "[e]ither such witness could have provided additional proof as to Petitioner's absence on the date of trial, in order to show that said absence was not willful and was, in fact, reasonable"; (2) trial counsel was ineffective in that he failed to properly object to impermissible statements made by the prosecution during its cross-examination of the Petitioner during his testimony at trial; specifically, trial counsel "should have objected to the prosecution's questions whether Petitioner's brother, [his] brother's friend, or anyone from the clerk's office who would have spoken to Petitioner's brother was present to testify on his behalf that day"; (3) trial counsel was ineffective in that he failed to properly object to impermissible statements made by the prosecution during its closing argument at trial; specifically, that trial counsel "should have objected to the prosecution's closing statements that if Petitioner's story were true, he would have produced additional witnesses to corroborate it, such as his brother or [his] brother's friend" and that "since no other witnesses w[ere] present[ed] on Petitioner's behalf, the jury could conclude that said witnesses' testimony would not have been favorable to the Petitioner"; (4) trial counsel was ineffective in that he failed to "properly argue that the prosecution's statements during closing argument violated the missing witness rule"; and (5) appellate counsel was ineffective in that he failed to "properly argue that the prosecution's statements during

- 4 -

closing argument violated the missing witness rule on appeal," and had appellate counsel properly raised this issue on appeal, the Petitioner "may have received relief from the appellate court."

The State filed a response in opposition on June 10, 2019. A hearing on the amended petition was held on November 4, 2020, at which only the Petitioner testified.

The Petitioner testified that he was currently serving time for promoting the manufacture of methamphetamine and had almost completed his sentence for that conviction and that this petition for post-conviction relief concerned his failure to appear conviction. He asserted that both trial counsel and appellate counsel were ineffective.

Though the Petitioner was incarcerated in Knox County on a different charge, he met with trial counsel every time he came to court, and they discussed the failure to appear charge and the possible sentence he could receive if he were convicted. According to the Petitioner, they also discussed any possible defenses to the charge. When asked about his defense at trial, the Petitioner explained that he had informed trial counsel why he had missed his court date and asked trial counsel to contact his brother. The Petitioner indicated that he asked trial counsel to contact his brother specifically because his brother was the one bringing the Petitioner to court, it was the Petitioner's brother who had car trouble, and it was his brother's friend who came to their aid. The Petitioner claimed that both of these individuals would have been able to support his defense, though he was not aware of trial counsel's ever trying to contact either of them. The Petitioner stated that he was on good terms with his brother "at the time" and had given trial counsel information to find his brother.

When asked how else trial counsel failed the Petitioner, the Petitioner responded by citing to this court's opinion on direct appeal saying that trial counsel "should have objected to five different things during closing arguments at trial," but he only objected to one, thus, waiving review of the other four statements. Relative to providing specifics of the four statements, the Petitioner said, "I think where 'I was a li[ar], I wasn't credible,' just that type of thing." The Petitioner claimed that had trial counsel objected to the other four statements made by the prosecutor regarding the Petitioner's "character about being honest," then he "could have had a different outcome at trial." The Petitioner further indicated that trial counsel should have objected to "statements made by the [S]tate['s] witnesses about how [he] didn't get [his] witnesses there." Relative to appellate counsel, the Petitioner testified that appellate counsel was ineffective because he did not raise on appeal the issue of trial counsel's failure to object to the prosecutor's various statements, thus, again waving plenary review of those statements.

The Petitioner testified that he filed this petition because his sentence of six years to serve at sixty percent was "just hard" for him and everyone he talked to felt like it was

"harsh as well." In addition, the Petitioner noted that the underlying charge of introduction of contraband into a penal institution was ultimately dismissed.

On cross-examination, the Petitioner acknowledged that while they were preparing for the failure to appear trial, trial counsel discussed the potential problems the Petitioner faced if he testified, including impeachment with his criminal record. The Petitioner, though, wanted to tell his side of the story. Trial counsel informed the Petitioner that it was ultimately his decision to testify, and a hearing was held to make sure the Petitioner understood that it was his decision to testify.

The Petitioner affirmed that he wanted the jury to believe his story about car trouble and that his "brother and his friend knew that these facts were true[.]" According to the Petitioner, had trial counsel contacted these two witnesses, they could have corroborated his story at trial. The Petitioner claimed that he provided trial counsel with information on how to contact his brother. Though he had previously testified that he and his brother had a really good relationship during the relevant timeframe, the Petitioner clarified that he and his brother had an on-again-off-again relationship. When asked whether his trial testimony regarding his relationship with his brother, that they "had fallen out with each other," was true, the Petitioner responded affirmatively and clarified that his memory would have been better back then. According to the Petitioner, his brother was now deceased.

The Petitioner indicated that he believed that his failure to appear case should "go away" because the underlying offense on which he failed to appear was later dismissed. However, the Petitioner acknowledged that his underlying case was still pending when he failed to appear in court and that Mr. Moore testified against him on the failure to appear charge.

The State asked the post-conviction court to deny the petition for post-conviction relief because the Petitioner had failed to produce his witnesses at the hearing to show prejudice, and the court could not speculate about what their testimony would have been had they been called. Post-conviction counsel responded that the Petitioner's brother could not be produced because he was deceased and that the Petitioner's affirmation that his brother's testimony would have been favorable to him was sufficient to establish prejudice. That concluded the parties' arguments.

The post-conviction court denied the petition for post-conviction relief and memorialized its decision in an order filed November 17, 2020. The Petitioner filed a timely notice of appeal. The case is now before us for our review.

ANALYSIS

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). We apply the Strickland test to claims of ineffective assistance of trial counsel as well as ineffective assistance of appellate counsel. Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial

and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

On appeal, the Petitioner argues that he received the ineffective assistance of counsel due to trial counsel's failure to call his brother to testify in his defense at trial. Then, requesting this court to apply the cumulative error doctrine, the Petitioner contends that he was prejudiced by trial counsel's "failures to properly object to the State's impermissible statements during cross-examination and closing arguments," trial counsel's failure to present the Petitioner's brother to testify, and trial counsel's "fail[ure] to argue the missing witness rule." As a final issue, he submits that appellate counsel was ineffective by failing to address the missing witness rule on appeal. The State responds that the post-conviction court properly denied the petition for post-conviction relief. We will address each of these issues in turn.

*I. Failure to Call Brother to Testify*

The Petitioner asserts that the trial counsel "was aware that [the Petitioner's] defense to the charge of failure to appear rested soundly on the jury believing that he had a reasonable excuse as to why he was not present in court for his original trial date of October 7, 2014." According to the Petitioner, though three possible witnesses existed to corroborate the events, the Petitioner's brother, his brother's friend, and the court clerk, the Petitioner only had information pertaining to the identity and whereabouts of his brother. The Petitioner concludes that trial counsel's failure to subpoena and call the Petitioner's brother to testify at trial was "extremely prejudicial." The Petitioner further notes that his brother was dead at the time of the post-conviction hearing, and thus, trial counsel's failure to secure the Petitioner's brother for trial "created a prejudice [that he] could never overcome." The State responds that the Petitioner cannot show prejudice because neither the Petitioner's brother, his brother's friend, nor the court clerk were called to testify at the post-conviction hearing.

Here, the post-conviction court concluded that because the Petitioner failed to produce the witnesses to show prejudice, the court could not presume what testimony the witnesses would have offered. The post-conviction court further commented that though the Petitioner was "in a difficult spot with regard" to his brother who was deceased, the Petitioner still could have produced his brother's friend.

Although the Petitioner advised that his brother was deceased at the time of the post-conviction hearing, he offered no proof as to what his alleged testimony would have been at trial, other than a bare allegation that it would have corroborated his story. It has long been held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented at an evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This court may not speculate as to their testimony. See, e.g., Juan Jose Reyes v. State, No. M2018-01075-CCA-R3-PC, 2019 WL 5295586, at *10 (Tenn. Crim. App. Oct. 18, 2019) (citing Black, 794 S.W.2d at 757) (concluding same when the petitioner did not offer proof of deceased witness's alleged testimony).

In addition, the Petitioner's testimony at the post-conviction hearing indicated that he was in contact with his brother at the time of the failure to appear trial, and therefore, he could have requested the information from his brother regarding the identity of his brother's friend and possibly the court clerk who received the telephone call. Moreover, at the failure to appear trial, the Petitioner testified to the contrary, stating that he and his brother had a falling out and were not on speaking terms at that time. See Graves, 2018 WL 2331869, at *3. Finally, at the failure to appear trial, Mr. Murray testified that he was actively looking for the Petitioner in the weeks leading up to trial and that his boss had contacted the Petitioner's brother trying to locate the Petitioner. Id. at *2. Also, Mr. Moore testified that the Petitioner's brother had contacted him the day before the trial was to begin. Id. at *1. Accordingly, it is clear from the record that trial counsel was aware of the Petitioner's brother's whereabouts and was in contact with him. The Petitioner did not present trial counsel at the post-conviction hearing to testify regarding his decision not to call the Petitioner's brother to testify. Without trial counsel's testimony, we would be forced to speculate about the reasoning behind his decision and whether any prejudice resulted from his actions. See Charles E. Wagner v. State, No. E2016-00823-CCA-R3-PC, 2017 WL 1205950, at *16 (Tenn. Crim. App. Mar. 31, 2017) (citing Black, 794 S.W.2d at 757). The Petitioner has failed to establish his factual allegations in this regard by clear and convincing evidence.

*II. Cumulative Error Doctrine and Appellate Counsel*

Next, the Petitioner states that "[t]his case should be examined under the cumulative error doctrine," and applying that doctrine, trial counsel's "failures to properly object to the State's impermissible statements during cross-examination and closing argument were

more than harmless error." The Petitioner asserts that "these multiple small errors combined to create a prejudice in the minds of the jury that could not be overcome." The Petitioner surmises, "The jury wrongly believed that [the Petitioner] had the burden of proving his own innocence, and the failure to secure [his b]rother's presence to put forth that evidence of [the Petitioner's] innocence resulted in his conviction. [Trial counsel] also failed to argue the missing witness rule, to [the Petitioner's] detriment." He further contends that had appellate counsel addressed the missing witness on appeal, "this matter might have been reversed on the merits during the appeal process." The State responds that there is no evidence in the record that suggests that any complained-of missing witness had peculiar knowledge of material facts, thus, there was no ineffective assistance. The State concludes that because there is no deficiency on any alleged ground, the Petitioner is not entitled to relief via the cumulative error doctrine.

The cumulative error doctrine applies to circumstances in which there have been "multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). This court has also considered this doctrine in the context of ineffective assistance of counsel. See Gary Hawkins v. State, No. W2016-00723-CCA-R3-PC, 2017 WL 2829755, at *8 (Tenn. Crim. App. June 30). Though the Petitioner raises these issues concerning the prosecutor's statements and the missing witness rule within the confines of the cumulative error doctrine only, we will briefly address them.

As noted by this court in the Petitioner's direct appeal, in State v Goltz, 111 S.W.3d 1, 6 (Tenn. 2003), this court outlined "five general areas of prosecutorial misconduct" that can occur during closing argument: (1) intentionally misleading or misstating the evidence; (2) expressing a personal belief or opinion as to the truth or falsity of the evidence or defendant's guilt; (3) making statements calculated to inflame the passions or prejudices of the jury; (4) injecting broader issues than the guilt or innocence of the accused; and (5) intentionally referring to or arguing facts outside the record that are not matters of common public knowledge. "In determining whether statements made in closing argument constitute reversible error, it is necessary to determine whether the statements were improper and, if so, whether the impropriety affected the verdict." State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996).

This court also observed that the missing witness rule allows a party to argue and have the jury instructed "that if the other party has it peculiarly within his power to produce a witness whose testimony would naturally be favorable to him, the failure to call that witness creates an adverse inference that the testimony would not favor his contentions." State v. Middlebrooks, 840 S.W.2d 317, 334 (Tenn. 1992). However, before a party may invoke the missing witness rule, the record must demonstrate that (1) the witness had

- 10 -

knowledge of material facts; (2) a relationship existed between the witness and the opposing party that would naturally incline the witness to favor that party; and (3) the missing witness was available to the process of the court for trial. State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984); Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979).

The Petitioner testified at the post-conviction hearing that trial counsel "should have objected to five different things during closing arguments at trial," but only objected to one. However, when asked to provide specifics relative to those other four statements, the Petitioner stated only, "I think where 'I was a li[ar], I wasn't credible,' just that type of thing." The Petitioner further claimed that had trial counsel objected to the other four statements made by the prosecutor regarding the Petitioner's "character about being honest," then he might "could have had a different outcome at trial." The Petitioner was not specifically asked about the missing witness rule at the post-conviction hearing.

The post-conviction court determined that the Petitioner had failed to show what difference an objection "to maybe a comment on [the Petitioner's] honesty from the witness stand" would have made to the outcome of Petitioner's trial. The post-conviction court further observed that there were "no other specific instances" of the prosecutor's statements addressed by the proof. We agree. The Petitioner has still not provided this court with any specifics of statements for this court to review. Moreover, the Petitioner was not specifically asked about the missing witness rule at the post-conviction hearing. Post-conviction counsel made no argument in this regard after the close of proof. The Petitioner has once again failed to establish his factual allegations by clear and convincing evidence.

Finally, "[i]n the post-conviction context, 'a petitioner cannot successfully claim he was prejudiced by counsel's cumulative error when the petitioner failed to show counsel's performance was deficient.'" Tarrants Yvelt Chandler v. State, No. M2017-01639-CCA-R3-PC, 2018 WL 2129740, at *10 (Tenn. Crim. App. May 9, 2018) (quoting James Allen Gooch v. State, No. M2014-00454-CCA-R3-PC, 2016 WL 498724, at *10 (Tenn. Crim. App. Feb. 4, 2016). Because the Petitioner has failed to establish any single deficiency, the cumulative error doctrine does not apply.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE